```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
            Criminal No. 15-164(1)and(2)(DSD/BRT)
```

United States of America,

       Plaintiff,

v.

Houston Oliver(1)and
James Green (2),

       Defendants.

    LeeAnn K. Bell, United States Attorney's Office, 300 South Fourth Street, Minneapolis, MN 55415, counsel for plaintiff.

    Larry E. Reed, Esq. and Reed Law Offices, P.O. Box 43596, Minneapolis, MN 55443, counsel for defendant Oliver.

    DeAundres D. Wilson, Esq. and Wilson Law Office, PA, 310 Groveland Avenue, Minneapolis, MN 55403, counsel for defendant Green.

This matter is before the court upon the objections by defendants Houston Oliver and James Green to the October 13, 2015, report and recommendation of Magistrate Judge Becky R. Thorson. In her report, the magistrate judge recommends denying Oliver's motions to suppress evidence and for a <u>Franks</u> hearing and Green's motions to suppress evidence and statements. Defendants timely objected. Based on a de novo review of the file, record, and proceedings herein, the court overrules the objections and adopts the report and recommendation.

**BACKGROUND**

The background of this motion is fully set out in the report and recommendation and the court summarizes only those facts necessary to resolve the current objections.

## I. Confidential Informant

On November 25, 2014, a longtime reliable confidential informant (CI) advised the Minneapolis Police Department that Oliver was shipping cocaine from Arizona to Minneapolis via two-day priority mail. The CI stated that Oliver had done so in the past by mailing cocaine packaged in silverware boxes from a particular post office in Maricopa, Arizona. The CI identified Green and co-defendant Desmond Williams as Oliver's accomplices. The police passed the information along to the Minneapolis postal inspector. The postal inspector then intercepted two priority-mail packages shipped from Arizona to Minneapolis. The packages were the same approximate weight and size and appeared to be addressed in identical handwriting. One of the packages originated from the post office identified by the CI. After a trained canine alerted to the presence of narcotics, the postal inspector obtained a search warrant for the two packages. When the postal inspector opened the packages, he discovered approximately two kilograms of cocaine in each package concealed inside silverware boxes, as foretold by the CI.

The police then contacted Williams, who agreed to an interview. During the interview, Williams corroborated the CI's information about the intercepted packages. Williams admitted to mailing one of the packages, and disclosed that Green had mailed the other one. Williams also disclosed that he and Green were present when Oliver packaged the drugs at an Arizona home, and that Oliver had supplied him with a cell phone to use for drug-related business.

**II. BMW Stop and Search**

Around the same time, the police received further information from the CI that Oliver was going to transport a large quantity of cocaine from Arizona to Minnesota in a gray BMW with Minnesota license plates. The drugs were due to arrive in Minneapolis on the night of November 30. The police determined that Oliver owned a 2002 BMW 745li with Minnesota license plates 672CAZ, and issued an alert for the vehicle.

Shortly before 10:00 p.m. on November 30, State Trooper Megan Thul, who was aware of the alert, spotted Oliver's BMW on I-35W in Minneapolis and pulled the vehicle over. Sherrod Rowe was the driver and sole occupant of the car. When asked about his itinerary, Rowe responded that he had flown from Minnesota to Arizona a few days earlier, picked up the BMW, and driven it back to Minnesota where he planned to return it to Oliver. Rowe said that he planned to call Oliver to arrange delivery of the BMW.

Rowe would not consent to a search of the BMW.

Officers ultimately determined that there was probable cause to impound the BMW based on the CI's corroborated statements. Officers conducted a brief search of the BMW's interior and trunk with a narcotics dog, which alerted to the possible presence of narcotics inside a speaker in the trunk. Officers decided to obtain a search warrant, and did not search the speakers at that time. In the interim, the BMW was towed to an impound lot.

**III. Search Warrant for BMW**

On the morning of December 2, officers secured a warrant to search the BMW for narcotics and related items. See Gov't Ex. 1, at 4-5. They found six kilograms of cocaine hidden inside a speaker in the trunk, a receipt in Green's name for new tires, a cell phone, and documents addressed to Oliver at addresses on Dupont Avenue North and Washington Avenue in Minneapolis.

**IV. Search Warrants for Properties**

Officers then interviewed Williams a second time. Williams indicated that Oliver called him and, in coded language, stated that six bricks of cocaine were in the BMW. Williams also told the officers that Oliver lived in a home on Dupont Avenue North, owned a second-story loft on North Washington Avenue, owned another building on West Broadway Avenue where Green was staying, and was

currently staying with his girlfriend in a Minneapolis hotel.[1]

Police obtained warrants to search Oliver's properties and the hotel room.  Officers were authorized to search for narcotics; cash and proceeds from the sale of narcotics; and documents, mailings, photographs, keys, address books, notes, receipts, ledgers, and "other media that shows standing at an address, responsibility for a vehicle, connections between persons, the location of the proceeds from the sale of narcotics, or that a crime has been committed."  Gov't Ex. 5.  The warrants for the properties on Dupont, Washington, and West Broadway Avenues also expressly authorized the seizure of cell phones, but the warrant for the Marriot Hotel room did not.  See id. Exs. 2-5.

Officers executed the warrants on December 2, beginning with the hotel room.  Oliver was in the hotel room at the time and was placed under arrest.  A search of his person uncovered cash, an identification card, and some credit cards.  Officers also seized five cell phones, documents, and a small amount of suspected marijuana.  Execution of the search warrants for Oliver's Dupont Avenue home and Washington Avenue loft yielded documents, including mail, a bank deposit bag, and a priority mail box.  Officers seized documents, two cell phones, and prescription bottles bearing Green's name from the West Broadway building.  No narcotics or

---

[1] The hotel was later more specifically identified as the Minneapolis Marriott Hotel, room 134.

firearms were found at any of the premises.  Officers arrested Green the same day, and a cell phone was seized incident to his arrest.  Officers questioned Green the following day.

**V.   Search of Cell Phones**

On December 23, police secured a warrant to search the numerous cell phones recovered during the searches.  The state judge who issued the warrant found probable cause to believe that the cell phones were either used in the commission of a crime or would contain evidence tending to show that a crime had been committed.  It is unclear whether the search of the cell phones yielded any evidence relevant to this case.

**VI.  Criminal Case**

On May 20, 2015, defendants were indicted on the charge of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Oliver filed a motion to suppress evidence, arguing that the search warrants were not supported by probable cause. Oliver also moved for a Franks hearing.  Green moved to suppress evidence and statements made during his interview.  In a thorough and well-reasoned R&R, the magistrate judge recommends denying the motions.  See ECF No. 117. Defendants have raised timely objections to the R&R.

## DISCUSSION

The court reviews the report and recommendation of the

magistrate judge de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

**I.   Oliver's Objections**

As an initial matter, the government argues that Oliver's objections should be stricken because his 49-page submission far exceeds the word count limit set forth in LR 72.2(c)(1)(A). Oliver's submission does indeed violate the court's local rule. Nevertheless, the court has carefully considered the objections and overrules them on the merits.

**A.   Factual Objections**

Oliver objects to the R&R's conclusion that the two mailed packages seized by the postal inspector each contained two kilograms of cocaine, arguing that each package instead contained one kilogram of cocaine. He contends that his position is supported by Williams's plea colloquy. He is mistaken. Oliver's position is wholly belied by the record and his objection is overruled. See Williams Plea Hr'g Tr. at 11:13-12:13; see also Mot. Hr'g Tr. at 79:23-80:6.

As noted by the government, the majority of Oliver's other factual objections relate to his motion for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), and will be discussed in that context.

**B.   Franks Hearing**

In Franks, the Supreme Court "held that a facially sufficient

7

affidavit may be challenged on the ground that it used deliberately or recklessly false statements to demonstrate probable cause." United States v. Smith, 581 F.3d 692, 695 (8th Cir. 2009). The Eighth Circuit has "extended this rule 'to allow challenges to affidavits based on alleged deliberate omissions.'" Id. (quoting United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986)). "[R]ecklessness may be inferred from the fact of omission of information from an affidavit ... only when the material omitted would have been 'clearly critical' to the finding of probable cause." United States v. Thompson, 690 F.3d 977, 987 (8th Cir. 2012) (quoting United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir. 1995). "[T]he test 'is whether, after viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." United States v. McIntyre, 646 F.3d 1107, 1114 (8th Cir. 2011) (quoting United States v. Butler, 594 F.3d 955, 961 (8th Cir. 2010)).

Oliver argues that the magistrate judge incorrectly recommended that the court deny his request for a Franks hearing because (1) the search warrant affidavits do not identify Williams as the CI, (2) the affidavits misrepresented Williams's role in the conspiracy, and (3) the affidavit underlying the search warrant for the BMW omits the fact that the narcotics dog indicated the presence of drugs in the BMW's trunk. None of these arguments has

merit.

As discussed in detail in the R&R, Oliver's theory that Williams is the CI is not supported by the record. Nor does the record support a finding that the affidavits misrepresented Williams's role in the conspiracy. To the contrary, the evidence presented during the suppression hearing and Williams's plea colloquy is consistent with the information provided in the search warrant affidavits.

Oliver's reliance on the omission of the narcotics dog alert to the BMW's trunk is likewise unavailing. Although that information would have bolstered the affidavit, there was ample other information supporting the finding of probable cause. Under the circumstances, the court cannot conclude that the search warrant affidavits contained deliberately or recklessly false statements or omissions. Oliver is not entitled to a Franks hearing.[2]

**C.   Search of BMW**

Oliver also challenges the search of the BMW. He argues that the basis for the CI's knowledge, as set forth in the underlying search warrant affidavit, was insufficient to establish that the information provided was reliable. The court disagrees. The record establishes that the CI provided reliable and exacting

---

[2] Oliver's motion for a Franks hearing is untimely and could be denied on that basis as well. See R&R at 31 n.13.

information leading up to the stop of the BMW. Specifically, the CI provided detailed and accurate information about the cocaine shipped from Arizona, including the originating post office, how it would be packaged, and when it would arrive in Minnesota. Williams further corroborated the CI's information in his interview with police. The CI also accurately informed officers about the BMW, including its license plate number, the route it would travel, and that it would arrive in Minneapolis on the night of November 30. Those corroborated facts, coupled with the CI's previous track record,[3] were sufficient to establish the CI's reliability in this case. Accordingly, the R&R correctly determined that there was probable cause supporting the search warrant for the BMW.

**D.   Search of Hotel Room**

Oliver next argues that the cell phones seized during his arrest at the hotel should be suppressed because his arrest was unlawful and the phones were outside the scope of the search warrant. The record does not support Oliver's arguments.

First, the cell phones were not seized incident to Oliver's arrest, but rather pursuant to the search warrant. See Gov't Ex. 5, at 6. Second, although the warrant does not expressly list cell phones as items to be seized, see id. at 1, it does list "other

---

[3] The search warrant affidavit states that the officer had worked with the CI for several years and that the CI provided information that has "produced evidence and arrests." Gov't Ex. 1, at 2.

media that show standing for an address, vehicle, the location of narcotics proceeds, or a connection between people, addresses and vehicles or that a crime has been committed." Id. It is self-evident that a cell phone could constitute such media.[4] Moreover, officers are not precluded from seizing items not listed in the search warrant if the items may contain items identified in the search warrant. See United States v. Gamboa, 439 F.3d 796, 807 (8th Cir. 2006) (concluding that the seizure of cell phones, which were not listed in the warrant, was proper because cell phones likely contain items specifically identified in the warrant, such as "records of the use and purchase of controlled substances"). Here, the search warrant lists "[d]ocuments, mails, address books, notes, receipts, ledgers, [and] photographs," all of which may well be found on a cell phone. Gov't Ex. 5, at 1.

In any event, officers were authorized to seize the cell phones under the plain-view doctrine. Under that doctrine, police may seize items without a warrant if the item is "(1) in plain view, (2) when it is observed from a lawful vantage point, (3) where the incriminating character of the item is immediately apparent." United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008). The first two elements are not in dispute, and the third is

---

[4] The court notes that the four other search warrants in this case expressly list cell phones as items to be seized. See Gov't Exs. 1-4. Although somewhat curious, that fact does not undermine the court's analysis.

11

established given the common recognition that "cellular telephones are recognized tools of the drug-dealing trade." United States v. Lazcano-Villalobos, 175 F.3d 838, 844 (10th Cir. 1999). Accordingly, the R&R correctly concludes that the cell phones were lawfully seized from the hotel room.[5]

### E. Search of Other Properties

Oliver lastly argues that the evidence seized pursuant the search warrants for his Dupont Avenue home, Washington Avenue loft, and West Broadway Avenue building should be suppressed. Oliver contends that the search warrant affidavits were insufficient to establish probable cause. For the reasons stated above with respect to the BMW warrant, the court disagrees. The R&R correctly finds that the warrants were supported by probable cause.

## II. Green's Objections

### A. Motion to Suppress Cell Phone

Green first objects to the R&R's recommendation that his motion to suppress evidence be denied. Green argues that because his arrest was not supported by probable cause, the cell phone seized incident to that arrest must be suppressed. Specifically, he argues that at the time of his arrest, police only knew that he was present when cocaine was being packaged, but did not have

---

[5] As noted, there is no indication as to what, if any, evidence was gleaned from the cell phones. Therefore, this issue may be moot in any event.

information that he was involved in packaging the drugs or that he knew the package he sent from Arizona contained drugs. Green ignores, however, the fact that the CI directly implicated him as one of Oliver's accomplices and that Williams confirmed his involvement in the conspiracy. See Gov't Ex. 1, at 1. That information was sufficient to establish probable cause. Nevertheless, even if Green is correct, police still had probable cause to arrest him because the facts create a reasonable inference that Green was "aware of the criminal nature of the transaction." United States v. Clark, 754 F.2d 789, 791 (8th Cir. 1985). Accordingly, Green's objection on this basis is overruled.

### B.   Motion to Suppress Statements

Green also objects to the R&R's recommendation that the court deny his motion to suppress statements. He argues that the officers should have stopped questioning him as soon as he said he was "done talking."

"If the individual indicates in any manner, at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease." Miranda v. Arizona, 384 U.S. 436, 473 (1966). That wish, however, must be unequivocally expressed "through a clear, consistent expression of a desire to remain silent." United States v. Ferrer-Montoya, 483 F.3d 565, 569 (8th Cir. 2009). The court has listened to the audio recording of the interview and is satisfied that Green did not express a clear,

13

consistent desire to remain silent. Although Green did say he was "done talking," he continued to speak immediately after that statement and to answer questions without hesitation. As a result, he did not evince a desire to remain silent and his objection is overruled.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The R&R [ECF No. 117] is adopted in its entirety;

2. Oliver's objections to the R&R [ECF No. 133] are overruled;

3. Oliver's amended motion to suppress [ECF No. 74] is denied;

4. Oliver's motion for a Franks hearing [ECF No. 103] is denied;

5. Green's objections to the R&R [ECF No. 134] are overruled;

6. Green's motion to suppress evidence [ECF No. 54] is denied;

7. Green's motion to suppress statements [ECF No. 55] is denied; and

8. Green's amended motion to suppress [ECF No. 81] is denied.

Dated: November 23, 2015

                                      s/David S. Doty          
                                      David S. Doty, Judge
                                      United States District Court